HORACE PARKS AND ANOTHER, AS ADMINISTRATORS OF J. LEE TINKER, DECEASED, APPELLANTS, *v.* CLARENCE ANDREWS, INDIVIDUALLY, AND ALSO AS ADMINISTRATOR OF JOSIAH ANDREWS, DECEASED, AND OTHERS, RESPONDENTS.

*Evidence — personal transactions with a deceased person — what is a trial.*

In an action brought to collect the amount due upon a contract for the sale of land, given on April 1, 1861, by the plaintiffs' intestate, J. Lee Tinker, to one Josiah Andrews and George Weyand, one of the defendants, a son and heir of Josiah Andrews, was asked the question: "After the death of your father did Mr. Tinker present any claim to you against your father's estate?" This question was objected to by the plaintiff on the ground that the witness was incompetent to testify. The objection was overruled and the witness answered: "No, sir; he made no claim for anything due upon this contract to me."

*Held,* that by this ruling the witness, who was an interested party defendant, was permitted, in his own behalf, to negative the existence of a transaction between himself and the plaintiffs' intestate, and that such evidence was incompetent.

The trial took place under an order made at Special Term directing that the question, "What amount is now unpaid upon the land contract annexed to the complaint in this action?" be tried by a jury, in pursuance of section 823 of the Code of Civil Procedure, and it was claimed that such trial was not "the trial of an action," and that the provision of section 829 of the Code was not applicable thereto.

*Held,* that it was a part of the trial, and as it was a judicial investigation of the main issue upon the merits, and its result was accepted by the court, before which the trial was completed, the provision of this section of the Code was applicable thereto.

APPEAL by the plaintiffs from a judgment, entered in the office of the clerk of the county of Oneida on the 8th day of July, 1889, in favor of the defendants, after a trial, at a Special Term held in the county of Oneida, before the court without a jury; and also from an order denying a motion for a new trial, entered in the office of the clerk of the county of Oneida on the 21st day of January, 1889, with notice that the appellants intended to bring up for review upon such appeal the said order, and to ask that the verdict be set aside and a new trial be granted.

This action was brought to collect, by foreclosure and sale, the amount due upon a land contract given on April 1, 1861, by J. Lee Tinker, plaintiffs' intestate, to Josiah Andrews, defendants' intestate, and one George Weyand. The amount to be paid was $2,714.25, and it all became payable on or before July, 1865. The plaintiffs admitted some payments, and claimed that there was a balance due of about three thousand dollars. In 1863 Weyand transferred all his interest to Andrews, who remained in possession until his death in 1884. Tinker died in November, 1885, and his widow, the plaintiff Amanda Tinker, afterward became the owner of the fee. The heirs-at-law of Andrews and the administrator of his estate are defendants. Relief was asked, such as is usual in mortgage foreclosure.

The defendants, in their answers, alleged that the contract was fully paid up before the death of Andrews. They also allege that in June, 1886, they tendered to plaintiffs the sum of $316.78 and demanded a deed, which was refused, and they ask a specific performance of the contract. In June, 1887, it was ordered at Special Term that the question, "What amount is now unpaid upon the land contract annexed to the complaint in this action," be tried by a jury in pursuance of section 823 of the Code of Civil Procedure. Such trial was had in May, 1888, and the answer of the jury to the question was, "Nothing." Thereafter, upon a case and exceptions made and settled, the plaintiffs moved at Special Term for a new trial upon the exceptions taken, and upon the ground that the verdict was contrary to the evidence and contrary to law. This motion was denied. At the same term the case came on for the trial of the remaining issues and for final judgment. The court adopted the verdict of the jury, declining to receive further evi-

dence on that issue, and findings were made upon which judgment was entered.

The decision was to the effect that the agreement set forth in the complaint and proven in this cause be specifically performed, and that the plaintiffs execute and deliver to the defendants a good and sufficient conveyance in fee simple of the real estate and premises described in the first finding of fact herein; that the contract described in the complaint in this action has been fully paid, and there is nothing due upon the same; that the complaint in this action should be dismissed, with costs.

*William Kernan* and *W. A. Matteson,* for the appellants.

*William E. Scripture* and *Oswald P. Backus,* for the respondents.

MERWIN, J.:

Upon the trial before the jury the defendant Clarence Andrews was called as a witness on behalf of the defendants, and having testified, among other things, that he was a son of Josiah Andrews, deceased, and was appointed administrator of his estate in May, 1884, was asked the question: "After the death of your father did Mr. Tinker present any claim to you against your father's estate." This was objected to by the plaintiffs on the ground that the witness was incompetent and disqualified to testify by section 829 of the Code. The objection was overruled and the plaintiffs excepted. The answer was, "No, sir; he made no claim for anything due upon this contract to me." By this ruling the witness, who was an interested party defendant, was permitted, in his own behalf, to negative the existence of a transaction between himself and the plaintiffs' intestate. This was not admissible. (*Clift* v. *Moses,* 112 N. Y., 427.)

It is, however, suggested that the trial in this case before the jury was not "the trial of an action" within the provision of section 829 of the Code. It was certainly a part of the trial; it was the judicial investigation of the main issue upon the merits. Its result was accepted by the court before whom the trial was completed. No reason is apparent why the provision of the Code should not apply. It is further suggested that the verdict is substantially right, and

that the evidence, without the objectionable part above referred to, is sufficient to sustain it.

It appears that the contract was executed in duplicate, each having a copy. Upon each of these some payments were indorsed. There were also payments from sales of certain portions of the premises, and about five acres were taken back by Tinker in 1868 at a certain price which was indorsed. Andrews also made some payments on mortgages that were on the premises and were to be paid out of the purchase-money. After applying all payments shown to have been so made, and deducting the amount of a mortgage still on the premises, there would still have remained at the time of the death of Andrews quite a large balance due on the contract, from eight to ten hundred dollars. Additional evidence was given from which it was claimed, as matter of inference, that the whole was paid. The defendant Clarence Andrews testified that, upon three occasions shortly prior to the death of Andrews, Tinker called upon the deceased and wanted to borrow small sums of money, and received at one of such times ten dollars, and on each of the other occasions twenty dollars. Another witness testified that, in the summer of 1885, Tinker said that "when the papers at the bank were paid up, Mr. Andrews was to have had his deed, and he was sorry he had not given it to him before Mr. Andrews died ; sorry it had not been settled up before Mr. Andrews died." There was a mortgage on the property, held by a savings bank, which was satisfied in 1882, to which it was claimed this conversation referred. Another witness testified that, soon after a sale of a portion of the premises to one Behr, from the proceeds of which the savings bank mortgage was paid, she called on Tinker for payment of a debt, and he said, among other things, "that place is all paid for," referring, as it is claimed by defendants, to the Andrews place in question, although from the cross-examination of the witness the inference is quite strong that reference was only made to that part which had then been sold. The defendants also read in evidence a portion of a deposition of the plaintiff Amanda Tinker, in which she testified that, after Mr. Andrews died, Mr. Tinker said, "that Mr. Andrews was to have had a deed when the Behr matter was settled up, and he wished he had given it to him." The balance of this deposition was read by the plaintiffs, and it showed quite clearly, from state-

ments of Mr. Tinker, that there had never been any settlement between Andrews and Tinker of the amount due on the contract, and that Tinker didn't know how much was due. She also testified that Mr. Andrews and her husband never settled up the contract.

The foregoing, with the objectionable evidence above stated, was substantially the evidence from which the jury inferred that the whole was paid. Clearly there was never any settlement between the parties. The burden of showing payment was on the defendants. In view of the apparently large balance unpaid, it may be said, with considerable force, that the evidence to sustain a finding that in some unknown way it was fully paid, was, to say the least, not very strong. This being the situation, the evidence of the defendant Andrews, that Tinker made no claim against the estate of Josiah Andrews, would naturally be deemed by the jury to be important; and we cannot say that it probably had no influence upon them in arriving at their verdict.

On the part of the plaintiffs, it was shown that in 1872 Andrews was insolvent, and testified, in proceedings supplementary to execution, that he had not been able to keep up the interest on the contract; that in 1882 and 1883 he stated to several persons, in substance, that there was a large amount due on the contract, more than the farm was worth. Andrews was a justice of the peace and town clerk, and had no business except working this farm. Tinker kept a store, and there was an unsettled store account between him and Mr. Andrews.

Under section 1003 of the Code an error in the admission of evidence may, in a case of this kind, be disregarded if the court is of opinion that substantial justice does not require that a new trial should be granted. The evidence in this case is not sufficiently satisfactory to enable us to fairly say that substantial justice is done by the finding that the contract was fully paid up.

The judgment and order must be reversed upon the exceptions and new trial ordered, costs to abide the event.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment and order reversed upon the exceptions and a new trial ordered, with costs to abide the event.